FILED
2005 Nov-28  AM 11:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **ELIZABETH HOPSON,** | ) | |
| **Personal representative for** | ) | |
| **Alfonzo Hopson, deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No.  CV-03-S-2910-NE** |
| | ) | |
| **CITY OF HUNTSVILLE,** | ) | |
| **ALABAMA,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Plaintiff, Elizabeth Hopson, is the widow and personal representative of Alfonzo Hopson, deceased.  She commenced this action in the Circuit Court of Madison County, Alabama, on September 22, 2003, but defendants removed it to this court[1] based upon plaintiff's assertion of a claim founded upon 42 U.S.C. § 1983 against the City of Huntsville, Alabama, and two of its police officers, Gary Trampas and Kevin Newey.

The action is before the court on plaintiff's motion to strike select evidence submitted by defendants in support of their motions for summary judgment or, alternatively, to compel further discovery pursuant to Rule 45 of the Federal Rules of

---

[1] *See* doc. no. 1 (October 27, 2003 notice of removal).

Civil Procedure;[2] and, the motion of all defendants to (i) strike plaintiff's designation of Jeffrey T. Harris, M.D. as an expert witness, (ii) strike an affidavit submitted by Dr. Harris in opposition to the motions for summary judgment, and (iii) preclude consideration of any other expert testimony which may be offered by Dr. Harris in this case.[3]

The detailed facts of this case are set forth in the memorandum opinion, also issued on this day, resolving the motions for summary judgment filed by defendants. The pertinent facts are summarized below. Plaintiff was driving her husband, Alfonzo Hopson, to the hospital on September 21, 2001, when her vehicle was stopped by Officer Gary Trampas of the Huntsville Police Department for a routine traffic violation. Plaintiff claims that the stop occurred at approximately 12:45 o'clock a.m., and that she and her husband were detained at the scene for approximately forty-five minutes. During the detention, plaintiff repeatedly asked Officer Trampas to transport her husband to the hospital, or to summon an ambulance, but these requests were denied. Instead, Officer Trampas conducted a records check of plaintiff's license information, and determined that her "license" was actually only a learner's permit.

---

[2] Doc. no. 59 (Motion to Strike Affidavit Testimony and Evidence). *See also* doc. no. 64 (Defendants' Response to Plaintiff's Motion to Strike Affidavit Testimony and Evidence).

[3] Doc. no. 55 (Amended Motion to Strike Plaintiff's Expert Witness Designation and Amended Motion *In Limine*). *See also* doc. no. 60 (Response to Defendants' Motions to Strike Plaintiff's Expert Witness Designation and Motions in Limine).

Officer Trampas also learned from the Records Division of the Huntsville Police Department that there was a possible warrant for plaintiff's arrest. Kevin Newey, another police officer employed with the Huntsville Police Department, arrived on the scene later. Officer Newey summoned an ambulance for Mr. Hopson at approximately 1:30 o'clock a.m., but plaintiff claims it was too little too late. Mr. Hopson was pronounced dead at 10:40 a.m. on September 22, 2001. He died of a massive cerebellar hemorrhage.

## I. PROCEDURAL BACKGROUND

This court entered a Scheduling Order that specified two particularly relevant deadlines. It ordered plaintiff to disclose any expert witnesses, "including a complete report under Fed. R. Civ. P. 26(a)(2)(B) from any specially retained or employed expert," no later than April 1, 2004.[4] It also required all discovery to be commenced in time to be completed by June 4, 2004.[5]

On April 13, 2004, twelve days after the first deadline, defendants received plaintiff's expert disclosures.[6] Plaintiff asserted that she expected Jeffrey T. Harris, M.D., to testify as an expert witness at trial. Plaintiff represented as follows:

> Jeffrey T. Harris, M.D.
>     Blackwell Medical Tower

---

[4] Doc. no. 12, Scheduling Order, ¶ 4.

[5] *Id.*, ¶ 2.

[6] Doc. no. 55 (Amended Motion to Strike), at 2.

201 Sivley Road
Suite 330
Huntsville, Alabama 35801
265-2695

Dr. Harris is expected to testify that he is a neurologist employed with Huntsville Hospital Neurological Associates; that he has reviewed Mr. Hopson's medical records and formed the following opinion: that symptoms of a cerebellar hemorrhage include the symptoms manifested by Mr. Hopson, to wit: vomiting, headaches in lower back of skull, balance problems with walking, dizziness, vertigo (spinning sensation), and speaking difficulties; that Mr. Hopson had a cerebellar hemorrhage; that hematomas 3 cm or larger should be considered for immediate surgical treatment in all cases, unless the patient is in deep stupor or coma; that Mr. Hopson's hematoma was 5 cm in its greatest dimension; that Mr. Hopson's comatose state ruled out surgical intervention; that the delay of 1 hour and 24 minutes in transporting Mr. Hopson to the Emergency Room caused or contributed to the deterioration of Mr. Hopson's condition from a conscious to a comatose state, and thus, caused or contributed to the inability to provide life-saving surgical intervention.[7]

Plaintiff did not disclose any more information regarding Dr. Harris.

The parties were next confronted with the discovery cut-off date, June 4, 2004. On that date, the parties filed a joint motion for an extension of time to complete discovery,[8] but the motion was denied.[9] Thus, the period for discovery expired. Nonetheless, plaintiff issued a subpoena pursuant to Rule 45 of the Federal Rules of Civil Procedure on July 30, 2004,[10] fifty-six days after the close of discovery. The

---

[7] *Id.* at attached "Rule 26(a)(2)(B) Disclosures" provided by plaintiff.

[8] Doc. no. 20.

[9] Doc. no. 21.

[10] Doc. no. 39 (Motion to Quash Subponea Duces Tecum), at attached subpoena.

4

subpoena was directed to "Sgt. Jerry Wheeler" at "Huntsville-Madison County 911 Center."

The "Huntsville-Madison County 911 Center" is also known as the Madison County Communications District ("MCCD").[11]  The MCCD is a "joint emergency communications center which co-locates seven public safety agencies' communications functions."[12]  Jerry Wheeler is "Police Communications Supervisor" at MCCD.[13]  Plaintiff's subpoena requested Sergeant Wheeler to produce the following: "Certified Copies of Audio Tape & Printout & Unit History of traffic stop by Officer Gary Trampas (Badge #448) and Officer Kevin Newey of Elizabeth Hopson at or near Drake Ave & Cobb Road from appr. 12:01 a.m. to 3:00 a.m. on 9/21/01 or 9/22/01."[14]

Defendants moved to quash the subpoena on August 17, 2004, on the basis that it was served after the close of discovery and therefore untimely.[15]  Plaintiff was

---

[11] See doc. no. 64 (Defendants' Response to Plaintiff's Motion to Strike), Ex. B, affidavit of Jeni Batt, ¶ 2 (The Madison County Communications District is "sometimes referred to as the 911 Call Center").

[12] Doc. no. 44 (Defendants' Evidentiary Submission), Ex. F, Affidavit Testimony of Jeni Batt, ¶ 2.

[13] Doc. no. 64 (Defendants' Response to Plaintiff's Motion to Strike), Ex. C, Affidavit Testimony of Jerry Wheeler, ¶ 3.

[14] Doc. no. 39, Motion to Quash, at attached subpoena.

[15] Doc. no. 39.

ordered to file a response by September 1, 2005,[16] and she did so.[17]  But one day

before that deadline, on August 31, 2004, defendants filed their motions for summary

judgment.  Thus, the discovery phase of this litigation was beginning to overlap with

summary judgment contentions.

In support of the motions for summary judgment, defendants submitted the

affidavit of Jeni Batt, who is a "Communications Supervisor" at MCCD.  In this

capacity,

> [Ms. Batt] has custody of records (including electronically stored data)
> and also audio recordings pertaining to, among other things, 9-1-1 calls
> for service received from the public as well as radio communications by
> and between law enforcement personnel who serve the Huntsville,
> Alabama, area, such as the Huntsville Police Department.[18]

An audio tape was submitted along with Batt's affidavit, which contained "an accurate

copy of the original recording of radio communications made on September 21, 2001,

by and between Officer Gary Trampas and Officer Kevin Newey . . . and  [a

Huntsville Police Department] dispatcher stationed at the MCCD."  Ms. Batt also

submitted "a true and correct copy of the event chronology generated by the MCCD

concurrently with the audio tape."[19]  Upon review of these materials, the court denied

---

[16] Doc. no. 40

[17] Doc. no. 47.

[18] Doc. no. 44 (Defendants' Evidentiary Submission), Ex. F, Batt affidavit, ¶ 4.

[19] *Id.*, ¶¶ 5, 6; *see also id*, Ex. F(1) and (2) (audio tape and event chronology).

defendants' motion to quash plaintiff's subpoena as moot.[20]

Meanwhile, plaintiff filed her opposition to defendants' motions for summary judgment on October 4, 2004.[21]   Among other materials, plaintiff submitted an affidavit prepared by Dr. Harris, in which he opined that even a ten minute delay in Mr. Hopson's treatment could have greatly reduced his chances for survival.[22]   On October 12, 2004, defendants moved to (i) strike plaintiff's designation of Dr. Harris as an expert witness, (ii) strike an affidavit offered by Dr. Harris in opposition to the motions for summary judgment, and (iii) preclude Dr. Harris from offering any further expert testimony in this action.[23]   Defendants' contention was that plaintiff had failed to disclose an expert report prepared and signed by Dr. Harris as required under Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure.

Plaintiff responded with her own motion to strike on October 22, 2004.[24]   Her underlying argument was that, even though the MCCD (through Jeni Batt) had disclosed *some* information, it was not fully responsive to her July 30, 2004 subpoena. On that basis, plaintiff moved to strike the following evidence submitted by defendants in support of their motions for summary judgment:  (1) the affidavit

---

[20] Doc. no. 48.

[21] Doc. no. 51.

[22] *Id.*, Ex. 5, Affidavit of Jeffrey Harris, M.D., at 3.

[23] Doc. no. 55 (Amended Motion to Strike).

[24] Doc. no. 59 (Motion to Strike Affidavit Testimony and Evidence).

testimony of Officer Gary Trampas;[25] (2) the affidavit testimony of Officer Kevin Newey;[26] (3) the affidavit, audio tape, and chronology of events submitted by the MCCD (through Jeni Batt);[27] and (4) a certified copy of plaintiff's arrest warrant,[28] as well as the affidavit testimony of Rick Weaver (not to be confused with Jerry Weaver) authenticating the warrant.[29]  There was an alternative aspect to plaintiff's motion as well.  In the event that the motion to strike was denied, plaintiff moved to compel production of "all of the [ ] documents" requested in her subpoena.[30]

Lastly, on November 5, 2004, plaintiff moved for leave to file a corrected response to defendants' motions for summary judgment.[31]  Among other matters, she informed the court that she had failed to submit a brief.  The motion for leave was granted.[32]  Plaintiff filed a brief,[33] and also re-filed the evidentiary materials which included the original affidavit of Dr. Harris.[34]

---

[25] Doc. no. 44 (Defendants' Joint Evidentiary Submission), Ex. A.

[26] *Id.*, Ex. B.

[27] *Id.*, Ex. F.

[28] *Id.*, Ex. I.

[29] Rick Weaver is "Administrative Assistant" to the Sheriff of Madison County, Alabama. Mr. Weaver had custody of plaintiff's warrant.  *Id.*, Ex. H, Affidavit Testimony of Rick Weaver, ¶¶ 2-4.

[30] Doc. no. 59 (Motion to Strike Affidavit Testimony and Evidence), at 3.

[31] Doc. no. 63.

[32] *See* order issued June 14, 2005 (no docket number assigned)

[33] Doc. no. 66.

[34] Doc. no. 67, Ex. 5 (Affidavit of Jeffrey Harris, M.D.).

## II.  DISCOVERY-RELATED MOTIONS

**A.    Plaintiff's Motion to Strike, or in the Alternative, to Compel Discovery**

**1.    Motion to compel**

In support of her motion to compel discovery from the MCCD, plaintiff submits the affidavit of Phillip Muhammed, who is a Deputy Sheriff employed with the Madison County, Alabama, Sheriff's Department.[35]  Deputy Muhammed attests that he has reviewed plaintiff's subpoena, and compared it with the evidence submitted by the MCCD (through Jeni Batt).  Deputy Muhammed claims that the disclosed material is not "completely responsive to the subpoenaed information, in that significant information is missing."[36]  Among other matters, Deputy Muhammed finds that information regarding the beginning and end of plaintiff's traffic stop has been omitted.[37]  Deputy Muhammed represents that he is qualified to attest to these matters

---

[35] Doc. no. 59 (Motion to Strike), Ex. 1.

[36] *Id.* at 2.

[37] Deputy Muhammed explained as follows:

The [events chronology submitted by Jeni Batt] does not contain any information concerning the initial stop, nor the time of the initial stop, nor any radio contacts with regards to record checks. Further, although the [audio] tape starts with a 1071 Code, which indicates that the vehicle is stopped; and a 1020 Code which provides a location for the stop which matches the location of Mrs. Hopson at the time of her stop as annotated on the Traffic Citation, it does not give a time of the initial stop. Neither the tape nor the HPD Chronology indicate the code, nor the time of the ending or completion of the event, or the events leading up to the completion of the event.  In fact, according to the HPD Event[s chronology], the last event was the transport of Mrs. Hopson to the Madison County Jail at 1:58.  According to the Sheriff Department records, Mrs. Hopson was checked into the Madison County Jail at 2:18 a.m. on September 21, 2004.  In summary, neither the tape, nor the HPD

because he "was assigned to light duty at the Huntsville-Madison County 911 Center for approximately four months."  Deputy Muhammed also relied on "knowledge that I have acquired over the past fifteen plus years with regards to 10-Codes, traffic stops, and radio transmissions regarding traffic stops."[38]  On the basis of Muhammed's assertions, but without citing any authority, plaintiff moves to compel the MCCD to produce "all of the . . . documents" requested in her subpoena.  The motion is due to be denied.

Rule 16(b) of the Federal Rules of Civil Procedure requires the district court to enter a scheduling order that limits the time to complete discovery.  "A schedule shall not be modified expect upon a showing of good cause and by leave of the district

---

Event chronology give the beginning, or the ending information, or times concerning the stop.

Both the tape and the HPD Event chronology contain information not related to the stop of Mrs. Hopson.

Further, the HPD Event was requested by keying into the computer the time of 1:18:34, as apparent in the fact that 1:18:34 is the first time posted; the fact that the events concerning any events prior to this time are omitted from the event chronology altogether; and in the repetitiveness of the time of 1:18:34, although lapses in time of more than a second are clearly indicated by the posting of events subsequent to the first posting of this time.

Additionally, the computer is designed to automatically print a description of each data entry and the date and time of each data entry.  Accordingly, the absence of a description of an event, and the absence of the time and date for each event entry indicates a manual deletion of this information.

Doc. no. 59 (Motion to Strike), Ex. 1, at 2-3.

[38] *Id.* at 1.

judge." Fed. R. Civ. P. 16(b).  The court entered a Scheduling Order in this action, requiring all discovery to be completed by June 4, 2004.  Plaintiff served her subpoena fifty-six days after this deadline, without seeking leave of the court.  The court finds that plaintiff's subpoena was untimely and, therefore, she has no basis to compel discovery from the MCCD.

Plaintiff offers several arguments to the contrary,[39] but ultimately, they are unpersuasive.  First, plaintiff contends that a Rule 45 subpoena is not "discovery" at all and, therefore, it was not governed by the court's discovery deadline.[40]  "Generally, the federal courts that have faced the issue of whether pre-trial subpoenas are discovery fall into one of two camps."  *Dreyer v. GACS, Inc.*, 204 F.R.D. 120, 122 (N.D. Ind. 2001) (citation omitted).  The majority of courts that have considered the issue have held that a Rule 45 subpoena constitutes discovery and, therefore, is subject to the discovery deadline specified in the court's scheduling order.  *See Mortgage Information Services, Inc. v. Kitchens*, 210 F.R.D. 562, 566-68 (W.D.N.C. 2002); *Dreyer*, 204 F.R.D. at 122-23; *Integra Lifesciences, LTD v. Merck*, 190 F.R.D. 556, 561 (S.D. Cal. 1999); *Marvin Lumber and Cedar Company*, 177 F.R.D. 443, 443-44 (D. Minn. 1997); *Rice v. United States*, 164 F.R.D. 556, 557-58 (N.D. Okla. 1995).[41]

---

[39] *See* doc. no. 47 (Response to Defendants' Motion to Quash).

[40] *Id.*, ¶¶ 1, 3.

[41] There are exceptions for the use of subpoenas at trial.  *See, e.g., Rice* 164 F.R.D. at 558 n.1 ("The Court notes that not all uses of Rule 45 subpoenas would constitute discovery and thereby

At least two courts, however, have interpreted their discovery deadlines so that a Rule 45 subpoena may be served even after the discovery cut-off date. *See O'Boyle v. Jensen*, 150 F.R.D. 519, 520 (M.D. Penn. 1993); *Multi-Tech Systems, Inc. v. Hayes Microcomputer Products, Inc.*, 800 F. Supp. 825, 854 (D. Minn. 1992). *See generally* Randolph Stuart Sergent, *Federal Document Subpoenas and Discovery Deadlines*, 34 Oct. Md. B.J. 54 (2001) (comparing the "majority" and "minority" rules).

After considering both views, this court concludes that a Rule 45 subpoena *is* discovery and, therefore, subject to the deadline established by the court's Scheduling Order. As several courts have noted, the interplay between Rules 16, 26, 34, and 45 of the Federal Rules of Civil Procedure strongly indicate, if not mandate, this holding. *See Kitchens*, 210 F.R.D. at 566-67; *Dreyer*, 204 F.R.D. at 122-23; *Marvin Lumber*, 177 F.R.D. at 443-44; *Rice*, 164 F.R.D. at 557-58.

Rule 16 requires district courts to enter scheduling orders limiting the time to complete "discovery." Rule 26, in turn, sets out the general provision governing the scope and limits of discovery. In particular, Rule 26(a)(5) allows parties to obtain "discovery" by several methods, including:

depositions upon oral examination or written questions; written

---

be affected by discovery deadlines. For instance, a Rule 45 subpoena may be employed to secure the production at trial of original documents previously disclosed by discovery."); *Integra Lifesciences*, 190 F.R.D. at 562 ("for instance a trial subpoena could be used to secure an original document, copies of which were obtained during discovery, where there is an objection regarding authenticity of the document for admission at trial") (citation omitted).

> interrogatories; *production of documents or things* or permission to enter
> upon land or other property *under Rule 34* or *45(a)(1)(C), for inspection
> and other purposes*; physical and mental examinations; and requests for
> admission.

Fed. R. Civ. P. 26(a)(5) (emphasis supplied).  Rule 34, in turn, provides that a "person

not a party to the action may be compelled to produce documents and things . . . as

provided in Rule 45."  Fed. R. Civ. P. 34(c).  Rule 45 completes the chain by setting

forth the purposes for which a subpoena may be issued:

> **(1)**  Every subpoena shall
>
>          . . . .
>
>          **(C)**  command each person to whom it is directed to attend and
> give testimony or to produce and permit inspection and copying of
> designated books, documents or tangible things in the possession,
> custody or control of that person, or to permit inspection of premises, at
> a time and place therein specified[.]

Fed. R. Civ. P. 45(a)(1)(C).  As one district court reasoned, "[h]ad the drafters of the

applicable Rules intended to exclude Rule 45 Subpoenas from the generally applicable

restrictions on discovery, then we think they would not have taken such pains to

assure a uniformity of treatment irrespective of the particular method of discovery

being employed."  *Marvin Lumber*, 177 F.R.D. at 444.  *See also Kitchens*, 210 F.R.D.

at 566 ("As other courts have noted, this conclusion [a Rule 45 subpoena is

"discovery"] is essentially mandated by the text of Rule 26, which expressly

incorporates Rule 45 subpoenas into its definition of discovery.") (citations omitted);

13

*Dreyer*, 204 F.R.D. at 123 ("'The inclusion of references to Rule 45 within Rules 26 and 34 is a clear indication that procuring documents from non-parties can constitute discovery.'") (quoting *Rice*, 164 F.R.D. at 557).[42]

Next, plaintiff asserts that Rule 45 subpoenas were excluded from the scope of "discovery" by operation of the parties' planning report and the court's Scheduling Order.[43]  The parties filed a Report of the Parties' Planning Conference on December 2, 2003,[44] pursuant to Rule 26(f) of the Federal Rules of Civil Procedure.  The report stated, in relevant part, as follows:

> **3.  Discovery Plan**.  The parties jointly propose to the Court the following discovery schedule:
>
>   a.    Discovery will be needed on the following subjects:
>
>   (1)  Plaintiff's claims and damages
>   (2)  Defendants' affirmative damages
>   (3)  Any other issues agreed upon by the parties
>
>   b.    All discovery commenced in time to be completed by

---

[42]   Indeed, the Supreme Court and the Eleventh Circuit have indicated, in passing, that "discovery" includes disclosures under Rule 26, 34, *and* Rule 45.  *See Devlin v. Scardelletti*, 536 U.S. 1, 15 (2002) ("This is confirmed by the application of those Federal Rules of Civil Procedure that confer upon 'parties' to the litigation the rights to take such actions as conducting discovery and moving for summary judgment, *e.g.*, Fed. Rules Civ. Proc. 30(a)(1), 31(a)(1), 33(a), 34(a), 36(a), *45(a)(3)*, 56(a), 56(b), 56(e).") (emphasis supplied); *Moore v. Armour Pharmaceutical Company*, 927 F.2d 1194, 1197 (11th Cir. 1991) ("The Federal Rules of Civil Procedure, however, strongly favor full discovery whenever possible.  *See* Fed.R.Civ.P. 26(b)(1).  Specifically regarding subpoenas, Fed.R.Civ.P. 45(b) allows a court to 'quash or modify the subpoena if it is unreasonable and oppressive.'").

[43] Doc. no. 47 (Response to Defendants' Motion to Quash), ¶ 2.

[44] Doc. no. 10.

August 2, 2004.

    c.    Maximum of twenty-five interrogatories by each party to
          any other party.  Each party shall have forty-five days to
          respond after service.

    d.    Maximum of forty requests for production by each party to
          any other party.  Each party shall have forty-five days to
          respond after service.

    e.    Maximum of forty requests for admissions by each party to
          any other party.  Each party shall have forty-five days to
          respond after service.

    f.    Maximum of ten depositions by plaintiff and ten
          depositions by defendant.[45]

The court then issued its Scheduling Order on December 4, 2003, two days after

receiving the parties' planning report.  The order provided that:

    **2. Discovery Cutoff:**  All discovery must be commenced in time
    to be completed by June 4, 2004.

          . . . .

    Except as expressly modified by the above, the stipulations,
    limitations, deadlines and other agreements set forth in the report of the
    parties shall apply in this case.[46]

Plaintiff contends that several observations are significant.  First, the parties'

planning report expressly limited the number of interrogatories, depositions, requests

for production of documents, and requests for admissions.  It did not, however,

---

[45] *Id.*, ¶ 3.
[46] Doc. no. 12.

15

mention Rule 45 subpoenas.  Thus, plaintiff argues that when the Scheduling Order said "[a]ll discovery must be commenced in time to be completed by June 4, 2004," the "discovery" did not include Rule 45 subpoenas.  As discussed above, however, the majority definition of "discovery" includes Rule 45 subpoenas.  The parties did not expressly narrow that definition in their planning report.   Plaintiff contends, unpersuasively, that the parties' planning report *implicitly* excluded Rule 45 subpoenas from the scope of discovery, and that the Scheduling Order *implicitly* recognized that agreement.

Plaintiff's remaining contentions also are unavailing.  Plaintiff's counsel represents that she "has never considered a subpoena duces tecum to be a part of discovery," and that she did not intentionally run afoul of the court's discovery deadline.[47]  A Scheduling Order may be amended upon a showing of "good cause," but the misunderstanding of plaintiff's counsel does not qualify.  Plaintiff's counsel also claims that "[p]rior to the commencement of this instant litigation, she was told by Huntsville Police Department that 911 tapes and printouts were not permanently retained and that such information on the police stop in the instant case was no longer available."[48]  If plaintiff believed this to be "good cause" for amendment of the Scheduling Order, she should have filed a motion seeking leave to serve her subpoena.

---

[47] Doc. no. 47 (Response to Defendants' Motion to Quash), ¶ 4.

[48] *Id.*, ¶ 5.

She did not do so, however.  As plaintiff offers no further argument on the matter, her

motion to compel discovery will be denied.[49]

_____

[49] One final observation is in order.  Plaintiff's motion identifies two specific items which purportedly remain undisclosed.  First, she seeks a document designated "EO135877," which records the time when an ambulance was dispatched for Mr. Hopson.  That document, however, is plainly located at doc. no. 44, Defendants' Joint Evidentiary Submission in Support of Renewed Motions for Summary Judgment, at Exhibit F(2).

Plaintiff also complains that she did not receive a recording of the radio transmissions made between Officer Trampas and the Records Division of the Huntsville Police Department.  To explain, Officer Trampas was monitoring a section of Drake Avenue between Cobb Road and Ivy Street when he observed plaintiff's vehicle traveling without a light illuminating the rear license plate. (Doc. no. 44, Defendants' Joint Evidentiary Submission, Ex. A, Affidavit Testimony of Gary Trampas, ¶ 3).  Officer Trampas pulled behind plaintiff's vehicle, activated his emergency lights, and radioed the Huntsville Police Department dispatcher.  He advised the dispatcher of the location, license plate number, color, and model of the vehicle.  (*Id.*, ¶ 4).  After stopping plaintiff's vehicle, Officer Trampas radioed the *Records Division* (as opposed to the dispatcher) to run a records check of plaintiff's license information.  (*Id.*, ¶¶ 7, 9, 11).  Later, after Officer Newey arrived on the scene, he radioed the Huntsville Police Department dispatcher (as opposed to the Records Division) to summon an ambulance for Mr. Hopson.  (*Id.*, Ex. B, Affidavit Testimony of Kevin Newey, ¶ 8).

Defendants concede that a recording of Officer Trampas's communications with the Records Division was never disclosed.  However, as Jeni Batt explained:

> There are no recorded radio transmissions between Officer Trampas or Officer Newey and the HPD Record Division pertaining to the subject traffic stop (HPD Event P2693036).  Rather, there are only recorded radio transmissions between Officer Trampas or Officer Newey and the HPD dispatcher with whom they were communicating.  This is not unusual . . . nor is it indicative of any evidence tampering.  First, as background information, the HPD Records Division and the HPD dispatcher were located at different places.  The HPD Records Division was located at HPD's headquarters at 815 Wheeler Avenue, and the HPD dispatcher was stationed at the MCCD located at 5827 Oakwood Avenue.  Second, standard operating procedure for checking HPD records requires HPD police officers to radio the HPD Record Division on a radio frequency that is different from the radio frequency utilized by the HPD dispatchers stationed at the MCCD.  Third, and most importantly, radio communications between HPD police officers and the HPD Record Division are not recorded by the MCCD, nor are they recorded by HPD or any other agency as far as I know.  This is the correct explanation of why there are no radio transmissions between Officer Trampas or Officer Newey and the HPD Record Division reflected on the original audio tape.

(Doc. no. 64, Defendants' Response to Plaintiff's Motion to Strike, Ex. B, Affidavit Testimony of Jeni Batt, ¶ 5(ii)).

2.      **Motion to strike**

a.      **Affidavit of Gary Trampas**

Plaintiff moves to strike the affidavit testimony of Officer Gary Trampas on the basis that the MCCD (through Jeni Batt) did not respond fully and completely to her July 30, 2004 subpoena. This contention is unpersuasive. The MCCD was not obligated to respond to plaintiff's subpoena and, moreover, plaintiff's subpoena was directed to the MCCD, not Officer Trampas. The court may not sanction Officer Trampas for a non-party's purported failure to comply with a discovery request.

Plaintiff also argues that Officer Trampas provided "false testimony" in his affidavit. The basis of this contention is unclear, but the court believes plaintiff is referring to the following facts. Officer Trampas stated in his affidavit that he transmitted radio communications to the Records Division of the Huntsville Police Department. The information disclosed by the MCCD did not include a record of those transmission. Therefore, according to plaintiff, Officer Trampas's affidavit testimony must be untruthful and should be stricken. This court disagrees. First, there is no evidence that the communications between Officer Trampas and the Records Division were ever recorded.[50] Plaintiff thus seeks disclosure of evidence which may not exist at all. More importantly, even if these communications were recorded, and

---

[50] *See id.*

18

the MCCD failed to disclose them, that would not prove that Officer Trampas gave "false testimony" in his affidavit.  The motion to strike the affidavit testimony of Officer Trampas is due to be denied.

> **b.      Affidavit of Kevin Newey**

Plaintiff moves to strike the affidavit testimony of Officer Kevin Newey on the basis that the MCCD (through Jeni Batt) did not respond fully and completely to her July 30, 2004 subpoena.  Plaintiff also argues that Officer Newey provided "false testimony" in his affidavit.  The motion is due to be denied for the reasons discussed above.

> **c.      Affidavit of Rick Weaver and plaintiff's arrest warrant**

Rick Weaver submitted a certified copy of plaintiff's arrest warrant, and an affidavit explaining his job duties as custodian of that warrant.  Plaintiff contends that this evidence is "irrelevant and immaterial" because the audio tape and chronology of events disclosed by the MCCD (through Jeni Batt) did not mention plaintiff's warrant. This argument is frivolous and it will be rejected without discussion.

> **d.      Evidence submitted by the MCCD (through Jeni Batt)**

Plaintiff contends that the MCCD (through Jeni Batt) did not respond fully and completely to her subpoena.  Plaintiff thus contends that all evidence submitted by Jeni Batt should be stricken.  This argument fails for all the reasons discussed in Part

II(A)(1) of this opinion.

Plaintiff also contends that the MCCD (through Jeni Batt) "altered" the evidence that it submitted into the summary judgment record. The court is not persuaded the any evidence was tampered with. Moreover, the court finds that striking this evidence, in practice, would have no effect on the court's resolution of the motions for summary judgment. Plaintiff was given the opportunity to dispute the evidence submitted by the MCCD, and she did so. Plaintiff's version of the facts will be accepted as true for purposes of summary judgment. The motion to strike the evidence submitted by the MCCD (through Jeni Batt) will be denied.

Finally, plaintiff requests a hearing on her motion to strike or, alternatively, to compel further discovery. The court has carefully considered the arguments presented by both parties, and finds that a hearing is unnecessary.

**B.      Defendants' Motion to Strike and *In Limine***

Defendants' motion to strike and *in limine* will be denied as moot, in light of the court's resolution of defendants' motions for summary judgment.

### III. CONCLUSION

Plaintiff's motion to strike select evidence submitted by defendants in support of the motions for summary judgment will be denied. The alternative aspect of her motion, to compel discovery from the Madison County Communications District, also

will be denied.  Defendants' motion to strike and *in limine* will be denied as moot.  An

appropriate order will be entered.

DONE this 28th day of November, 2005.

_____
United States District Judge